ELONORA O. SALMON, EXECUTRIX OF THE LAST WILL OF FRANCIS SALMON, DECEASED, *v.* ALFRED SYMONDS *et als.*

WHEN PATENTEE OF LAND HOLDS IT IN TRUST.—If a Mexican grant of land is confirmed to the wrong person, and a patent of the United States for the same issued to a person who did not own or claim to own the grant, and had no right to the patent, the patentee will be deemed to hold the legal title in trust for the real parties in interest.

SAME.—The law in such case raises a trust in favor of the party to whom the grant was made, or his successor in interest, whether the patent was taken in the name of the wrong party as a matter of convenience, or for any other reason.

EVIDENCE OF A CONVEYANCE OF LAND.—The Mexican government granted a tract of land to P., who sold the same to S. and others, except a half league in the southeast corner. S. and his co-tenants, in their petition for the confirmation of the grant, stated that the half league belonged to H., and after a confirmation the patent issued to S. and his co-grantees and H. in such form as to make them tenants in common of the legal title. The half league, by consent of S. and his co-grantees, was afterwards set off to H. in partition. P. then sold it, and S. brought an action to recover the land against his grantees. H. was not a party to the suit, nor to any of the antecedent proceedings for confirmation, nor to the partition, nor was any conveyance from P. to H. offered in evidence. *Held,* that the statement in the petition of S. and others that H. owned the half league, and the insertion of his name in the patent, and their acts setting it off to him in partition, were not evidence as against P. or those claiming under him that P. ever conveyed to H., or that H. ever owned the land, and that the defendants so far as appeared had acquired P.'s title.

WHO PROPER PARTIES.—In said action, the defendants, as successors in interest to P., set up their equitable title to the said half league, and the circumstances under which the legal title had been obtained by S. and his co-grantees, and asked that S. be adjudged to convey to said defendants the legal title to said half league, so far as it stood in S. *Held,* that neither the co-tenants of S. nor H. were necessary parties to said proceeding for affirmative relief.

APPEAL from the District Court, Seventh Judicial District, Sonoma County.

Pending the action, Francis Salmon, the original plaintiff, died, and his surviving wife, the executrix of his last will, was substituted as plaintiff.

The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*George Pearce*, for Appellant, argued that the decree was erroneous, because all the patentees were not parties to the suit, and that the judgment then did not settle the rights of all the parties, and that in equity a decree should finally determine the rights of all parties in interest; and cited Story's Eq. Jur. Secs. 27–30, 478, 485. He also argued that the petition to the Board of Land Commissioners and the patent showed that Padilla's reservation of the half league in his deed to Vallejo was in favor of Heyermann; and that as plaintiff held the legal title, and could not be considered the trustee of Padilla or his grantees, as trusts could not be enforced except where they were certain and definite; and cited 2 Story's Eq. Jur. Secs. 964, 979*a*, 1,195.

*Wm. S. Bliss, A. W. Thompson,* and *George Cadwalader,* of counsel for Respondents, argued that there was no necessity for the other patentees beside plaintiff to be made a party, because they all held under the patent as tenants in common, and each one became a trustee to the extent of his undivided interest, and each was bound to convey by separate deed upon demand of the *cestui que trust;* and cited *Estrada* v. *Murphy,* 19 Cal. 248. Upon the question of plaintiff holding the legal title in trust, they argued that, as the record showed no conveyance from Padilla he would be deemed the *cestui que trust;* and cited *Willis* v. *Wozencraft,* 22 Cal. 608. They also argued that Padilla's grantees, Vallejo and Frisbie, could not destroy the trust created by Padilla in his deed to them by any declarations they may have made in their petition to the

Board of Land Commissioners; and cited *Sheppard* v. *Mc-Every*, 4 John. Ch. 136.

*Henry Wilkins*, and *James C. Stebbins*, also for Respondents, argued that Padilla being the owner of the entire grant, his reservation of the half league created in law a trust as to the half league in favor of himself; and cited 4 Kent, 468.

By the Court, SAWYER, J.:

In 1845, Pio Pico, Provincial Governor of the Californias, granted to Juan N. Padilla a tract of land in Sonoma County, called "Rancho Roblar de la Miseria." On the 6th of March, 1850, said Padilla conveyed the said rancho to M. G. Vallejo and J. B. Frisbie, "excepting and reserving therefrom one half (Spanish) league, to be taken from the southeast corner of said 'Rancho Roblar de la Miseria,' * * * it being the intention of said Juan Padilla to sell and convey to said Vallejo and Frisbie the entire of said rancho, except one half league square, to be taken from the southeast corner thereof, as above designated." On the first day of April, 1850, said Vallejo and Frisbie conveyed said rancho to Daniel Wright, Francis Salmon and others, with an exception of a half Spanish league square in the southeast corner, the exception being in the language of the exception in the deed from Padilla to them, above quoted. On the 24th of February, 1852, the said Daniel Wright, Francis Salmon and others, grantees of Vallejo and Frisbie, presented the said grant to the Board of Land Commissioners for confirmation. In their petition presenting their claim to the Board of Land Commissioners, they state the facts relating to the making of said grant to Padilla. They then state that on the 25th of February, 1850, said Padilla "sold and transferred" to one Heyermann one half league of said land, and on the 6th day of March, 1850, by deed of that date conveyed to Vallejo and Frisbie "all the remaining part of said tract or Rancho Roblar de la Miseria, except the one half league square sold to said Heyermann,"

and that Vallejo and Frisbie subsequently conveyed to the petitioners. They therefore pray for a confirmation of the grant, and in their prayer say, that said Heyermann joins in the petition. The said petitioners did not have any claim, or title to said lands other than through the said grant and conveyances, and the fact that they claimed through said grant to Padilla is alleged in the complaint. The grant was confirmed, surveyed and patented to said petitioners and Heyermann by patent in the usual form. There is nothing in the record tending to show that Padilla ever did convey the half league to Heyermann, except the representation of the said claimants in their petition to the Board of Land Commissioners; and Heyermann was not a party to that petition, except so far as the statement of the petitioners in the prayer that he joined in the prayer, made him a party. It does not appear that he ever recognized their proceedings or claimed anything under the patent. Nor could it be claimed that he was so far a party to the proceeding as to be bound by it without such recognition. Subsequently, Salmon and the other claimants under Vallejo and Frisbie entered into an agreement for partition, by the terms of which it was provided that a half league square should first be set off from the southeast corner of said land as surveyed and patented, and that the remainder of said rancho should be divided between said claimants under Vallejo and Frisbie; and said half league was set off and the remainder of said rancho divided in pursuance of said agreement, said parties mutually conveying to each other the portions of said remainder falling to them respectively. Thus, throughout the entire proceedings, these parties, including Salmon, recognized the fact that neither Salmon, nor any of said parties holding under Vallejo and Frisbie had, or claimed any interest in said half league. Neither Padilla, nor Heyermann, nor any other party claiming an interest in said half league, so far as shown by the record, was a party to said partition, or to any of said proceedings for confirmation, except so far as Heyermann became a party in the manner and to the extent before mentioned. The setting off and

segregation of said half league was fairly and equitably done, and assented to by said Francis Salmon, and all the other claimants under the conveyance from Vallejo and Frisbie.

On the 24th of July, 1860, by deed of quitclaim, said Padilla conveyed all that tract of land in Sonoma County known as " Rancho Roblar de la Miseria," to Gustave Touchard, Clement Beyreau and Abram W. Thompson, " it being the intention " of the said Padilla, as expressed in the deed, " to convey and confirm to said parties of the second part all the right, title and interest of the said party of the first part (Padilla) of, in and to the said tract of land, not heretofore legally conveyed by the said party of the first part to any other person ·or persons." And Touchard, Beyreau and Thompson, claiming under said last named deed from Padilla, conveyed to defendants respectively the several portions of said half league, set off as aforesaid, of which they are now in possession.

On the 12th day of January, 1863, Francis Salmon, one of the grantees of Vallejo and Frisbie, and one of the parties to the proceedings for confirmation, and one of the patentees in the patent issued in pursuance of the decree of confirmation, commenced this suit to recover the lands described in the complaint ; which land, as described therein, is said half Spanish league square, set off and segregated as aforesaid from the southeast corner of said rancho, and which half league has never been conveyed by Padilla to Vallejo and Frisbie, plaintiff's grantors. The only title under which plaintiff claims is that derived from Padilla through Vallejo and Frisbie, and the said proceedings of confirmation and patent.

The defendants claim the portions of which they are respectively in possession under the said conveyances from Padilla to Touchard, Beyreau and Thompson, and conveyances from said parties to themselves. They respectively describe the particular portions thus claimed, and of which they are severally possessed, and disclaim as to the remainder, and all are within the half league segregated as aforesaid. The defend-

39

ants set up in their answer the circumstances above stated, under which the plaintiff and his associates obtained the patent to the entire rancho in their own names, and the conveyance of Padilla's interest to themselves, and insist that the patent issued under such circumstances as to raise a trust in the plaintiff in favor of Padilla and those claiming under him, so far as the legal title vested in plaintiff to the half league, never conveyed by Padilla to Vallejo and Frisbie; that plaintiff and his associates, in fact, never owned or claimed to own that half league, and were never entitled to any patent to that portion of the grant; and that, having taken a patent to the whole when they were only entitled to a portion, they must hold the title to the half league for the benefit of the parties and their grantees, who really owned it at the time the patent issued. They therefore sought to avail themselves of their equitable estate as an equitable defense, and asked, as affirmative relief, that the plaintiff be adjudged to convey the legal title thus acquired by him to the defendants, who had obtained the equitable estate through conveyances from Padilla. The Court found in favor of the defendants in respect to the equitable matters set up in their answer, and directed the conveyance of the legal title held by plaintiff to be made.

*A patentee not owning the grant patented holds it in trust.*

The facts show, that, so far as the legal title to the half league excepted from the operation of the conveyance from Padilla to Vallejo and Frisbie is vested in the plaintiff and his co-grantees from them, by virtue of the patent of the United States, it is vested in parties who did not own the land, and who had no right to the patent. Their own petition for confirmation, and all their subsequent acts show, that they not only were not entitled to that half league, but also that they did not claim any interest in it for themselves, beneficial or otherwise. So far, then, as the patent vested the legal title in them, to that extent they had no right to it, and they must be deemed to hold it in trust for the benefit of the real parties in interest. The law in such cases raises a trust in favor of

the party entitled. Whether the title was thus taken by parties confessedly having no interest in that part of the land as a matter of convenience—the grant to the entire tract having been confirmed—which seems to have been the case, or for any other reason, it is inequitable that they should avail themselves of their own act in thus procuring the legal title to appropriate the lands to their own use. In such cases a Court of equity will control the operation of the legal title for the benefit of the *cestui que trust*. (*Estrada* v. *Murphy*, 19 Cal. 272, 274 ; *Clark* v. *Lockwood*, 21 Cal. 220 ; *Emeric* v. *Penniman*, 26 Cal. 124 ; *Castro* v. *Hendricks*, 23 How. U. S. 442 ; *Brush* v. *Ware*, 15 Peters, 34 ; *Hardy* v. *Harbin*, Mr. Justice Field, Circuit Court, U. S. See also, inferentially, *Rico* v. *Spence*, 21 Cal. 511.)

### *Who is a cestui que trust.*

The question, then, is, who are the parties for whose benefit the plaintiff holds that part of the legal title vested in him? The record shows that the grant was originally made to Padilla; that all but one half a Spanish league square, to be taken from the southeast corner, was conveyed by him to plaintiff and his co-grantees through Vallejo and Frisbie, and so far as any other conveyances are shown, that all the remainder—viz: the said half league—passed from Padilla to Touchard, Beyreau and Thompson, and portions from them to the several defendants. There is nothing to show that a half league was conveyed by Padilla to Heyermann, except the statement of plaintiff and his co-petitioners in their petition to the Board of Land Commissioners, and the patent issued upon that representation in the petition, to which proceeding neither Padilla, Heyermann, nor those claiming the half league under Padilla were parties. If Heyerman is shown by the record to have any interest in the land patented, it is as tenant in common with the other patentees of the whole rancho, and not as grantee of the particular half league in the southeast corner. The defendants, as to the half league in question, connect themselves with Padilla, and no other parties do.

It is not shown that Heyermann has any conveyance of the said half league from the original grantee, or that he has ever claimed the land, or taken any action whatever in relation to it. Upon the record as presented, then, the defendants are the parties who have succeeded to the interest of Padilla in the several parcels possessed by them respectively, and they are the real parties for whom the lands are held in trust. We think the facts upon which the trust arises, although perhaps in some respects inartificially stated, are sufficiently set up in the answers.

But it is insisted by the appellant, that the proper parties are not before the Court to enable it to settle the entire controversy, and grant the proper relief upon the matters set up in the answer. There is nothing in the pleadings to show that Heyermann could, by any means, have any interest in the case. It is only upon the introduction in evidence of the petition of plaintiff and his associates, and the patent based on the petition, that his name is brought into connection with the subject matter of litigation at all; and this furnishes no legal evidence against defendants that the half league in question was ever conveyed by Padilla to Heyermann. It is but the *ex parte* statement of the plaintiff himself, and the action of the United States Government on that statement, in a proceeding to which neither Padilla, nor those claiming under him, were parties. There is nothing in the record showing an interest in Heyermann of which the Court can take notice. So far as the co-tenants of plaintiff are concerned, the contest is between the plaintiff and defendants alone. He is a tenant in common with others of the legal title, it is true, but there is no joint ownership of the share held by him. He alone is interested in that individual interest standing in his name. He is severally and not jointly seized. Others may be interested in the same questions, but not in the same estate—the same subject matter. He alone has challenged the right of the defendants, and it is to his challenge that they have responded. For aught that appears, the other patentees have not sought to deprive the *cestui que trust* of the benefit of the

trust property. But, whether they have or not, we do not see how their interests, which are held in severalty, and not jointly with plaintiff, can in any way be affected by the judgment. The same questions of law may be involved; but so, also, this may happen upon two promissory notes made and held by different parties. This fact does not make the parties to the different notes interested in the same subject matter of litigation. So, also, the co-tenants of the plaintiff have no interest in the subject matter of the litigation, and will not be affected by the judgment. The same may be said of Heyermann. If he really has a conveyance from Padilla prior in time to that under which defendants claim, and if he is consequently the real *cestui que trust*, the defendants will also hold the title conveyed to them by plaintiff under the judgment in trust for him. But, however this may be, we are not authorized to assume that Heyermann has an interest upon the declarations of plaintiff and his co-claimants in their petition to the Board of Land Commissioners, to which proceedings neither the defendants nor their grantors, nor Heyermann, were parties. The defendants having connected themselves with Padilla, if the plaintiff claimed that Heyermann, or parties other than defendants, acquired the interest of Padilla through prior conveyances, and thereby became the beneficiaries of the trust, it rested upon her to show it. This she failed to do.

It follows that there is no error in the judgment of the District Court. It is accordingly affirmed.

Mr. Chief Justice CURREY, being disqualified, did not participate in the decision of this case.