## C. F. BLUDWORTH v. GEORGE P. LAKE. (No. 1.)

GRANT OF LAND BY CONGRESS TO THE STATE.—The State, by the Act of Congress, received a present grant of five hundred thousand acres of land, to be selected out of such lands as were open thereto, in such manner as the State by her Legislature should direct.

Points decided.

EFFECT OF LOCATION OF LAND BY THE STATE.—When the selection and location are once made pursuant to the legal directions, of lands subject thereto, the general gift of quantity to the state becomes a particular gift of the specific lands located, vesting in her a perfect title to the same, which title passes by her patent.

EFFECT OF ISSUING AND LOCATING STATE LAND WARRANT. — When the State issues her land warrant and receives the sum of money required to be paid therefor, she thereby sells the amount of land specified in the warrant out of the five hundred thousand acres granted by the Act of Congress, and authorizes the holder, as her agent, to locate the same upon any vacant lands belonging to the United States subject to such location. When this location is made, the locator thenceforth becomes the owner of the entire beneficial interest in the particular tract of land selected, and until the issuing of the patent the State holds the legal title in trust for the locator who has become the purchaser.

IDEM.—Where S. made a valid location of such a land warrant on a certain three hundred and twenty acre tract of land, which was subject to such location, he thereby became the owner of the entire beneficial estate therein, and thereafter the State, until a patent issued, held the legal title in trust for him.

EFFECT OF CONVEYANCE OF HIS INTEREST BY LOCATOR OF LAND WARRANT.— Where S., after such location of his warrant, and before the issue of patent from the State to him, conveyed all his right, title, and interest in the located land, he thereby not only conveyed his beneficial interest in the land, but his right to a conveyance of the legal title.

WHEN PATENT ISSUED TO ONE NOT HOLDING THE BENEFICIAL ESTATE.—Where S., who located such warrant and had conveyed all his interest in the located land to H., and afterwards procured the patent to the same from the State, he thereby acquired no new interest in the land of an adverse character, subsequent to his conveyance to H., but after the patent he held the naked legal title in trust for H.

IDEM.—In such a case the law raises a trust in favor of the party holding the beneficial estate, which a Court of equity will enforce, and this whether S. intended to commit a fraud in procuring the patent or not.

IDEM.—The failure of the holder of the beneficial estate to appear before the Register of the State Land Office and contest S.'s right to a patent, did not conclude him.

MORTGAGE OF LANDS.— A mortgage, under our statute, is not a conveyance of lands, nor does the mortgagee take any estate in the land mortgaged. He has a lien upon it simply for the security of his demand, which can only be enforced by a judgment for the sale of the property mortgaged, and a sale in pursuance of the judgment.

WHO AFFECTED BY A FORECLOSURE.—The title of the grantee of mortgaged property is not affected by a foreclosure and sale, in a suit commenced after the conveyance by the mortgagor, unless the grantee is made a party to the suit.

EXPENSES OF PATENT. — Where S. incurred necessary expense in procuring a patent of land to which H. was at the time entitled, a Court of equity, when enforcing a trust as to the title so acquired in favor of H. and against S., will, as a condition, adjudge H. to repay to S. such expense ; and if H. was entitled to a part of said lands only, then to repay a proportionate share of such expense.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

The defendant had judgment in the Court below, but the Court dismissed defendant's cross-complaint. The defendant appealed, and assigned that the Court erred in dismissing defendant's cross-complaint for equitable relief.

The other facts are stated in the opinion of the Court.

*P. G. Wigginton,* and *J. H. Budd,* for Appellant, argued the several propositions of law affirmed in the opinion of this Court on this appeal, citing the Act of Congress of September 4th, 1841, granting lands to the State of California; *Doll* v. *Meador,* 16 Cal. 322; Circular of General Land Office of August 6th, 1857—division 10 of Circular; Wood's Dig. 745; Last clause of Sec. 4, Ch. CCCXIII, Stats. 1859; Secs. 3 and 4 of the Act of May 4th, 1852 (Cal. Stats. 1852); Adam's Equity, American notes, 4th Ed., p. 163, (original p. 36,) note 1; *Wilson* v. *Castro,* 31 Cal. 420.

*John B. Hall,* and *W. S. Montgomery,* for Respondent.

The judgment of dismissal of appellant's cross-bill for equitable relief should be affirmed.

The Register of the State Land Office was not permitted to issue the certificate of the applicant's right to a patent until satisfactory evidence is presented of these two essential facts, to wit:

1st. That the required public notice has been given.

2d. That the applicant is the person really entitled.

This proof was submitted. Under this notice the defendant was at liberty—if, as he asserts, "the plaintiff was not entitled to a patent to himself alone"—to appear and to contest the application therefor. (Session Laws, 1859, Ch. CCCXIII, p. 338; Session Laws, 1864, Ch. CCCXCVII, p. 598.)

In the absence of actual fraud, the defendant—having had

33

the right and the opportunity of setting up his claim before the Register—is precluded by reason thereof from the right to relief in equity, as sought by this bill.

By subdivision third of section two of the Act of April 16th, 1859, (Session Laws, 1859, Ch. CCCXIII, p. 338,) after notice, all persons holding adversely may appear and contest the applicant's claim for the patent.

The publication of the notice was equivalent, as in many analogous judicial or quasi-judicial proceedings, to service of summons, and thereby the Register's jurisdiction attached, to hear and determine the question of the title to the patent, and the person in whom that patent was.

The applicant in this proceeding takes the character of a plaintiff, and all adverse claimants affected by the notice become defendants. The decision of the officer of original jurisdiction is not final, but for a final determination, where the state of the case demands it, the whole subject and parties are sent, with the case stated by the Register, to the proper District Court, whose judgment then operates as mandatory to that officer. (Session Laws, 1863, Ch. CCCXCVII, Sec. 27.)

A contest for the " evidence of title" to lands sold by the State must reach the District Court by way of the State Land Office, as prescribed in that Act.

The defendant did not choose to follow these provisions, which would have afforded him his day in Court; he, has, therefore, neglected to lay a proper foundation for a suit in chancery. His omission in this respect should be held tantamount to a declaration of non-claim and acknowledgment of the validity of the plaintiff's right to the legal title for every part of the patented premises.

All the conveyances subsequent to the location by Snelling, (except the mortgage from Hall to the plaintiff, of January 3d, 1861, and the deed from Hall and others to the defendant, of December 3d, 1861,) were, in terms, and in legal effect, either deeds of quitclaim or of the grantor's present interest. The operative words in the deed of the

plaintiff to Hall, who is the defendant's grantor, are "granted, bargained, sold, remised, and quitclaimed, all the right, title, and interest," and this is true of the other conveyances with the above stated exceptions. (See *Gee* v. *Moore,* 14 Cal. 472 ; *Clark* v. *Baker,* 14 Cal. 12 ; *Kimball* v. *Semple,* 25 Cal. 440 ; *Fouchard* v. *Crow,* 20 Cal. 150 ; *Morrison* v. *Wilson,* 30 Cal. 344.)

A conveyance purporting only to transfer " the right, title, and interest," will not operate, either at the common law, or under the thirty-third section of our Act concerning conveyances, to vest in the grantor a title or interest subsequently acquired by the grantor, even though there is a covenant of warranty contained in the conveyance. (See cases last above cited ; also, *Jackson* v. *McCracken,* 14 Johns. 193 ; *San Francisco* v. *Lawton,* 18 Cal. 465 ; *Franklin* v. *Dorland,* 28 Cal. 175.)

The defendant has not offered to do equity, in these respects, to wit : First—He has not proposed to contribute a part of the outlay made by plaintiff or his assignor, for the purchase of the warrant, and the expense of location, and obtaining the patent, proportioned to the land to which he claimed the title, thereby conveyed. Second—He has not offered to redeem the entire premises in suit, or any part thereof, from the sale under the Hall mortgage, or to waive or surrender his equity of redemption. The maxim, that equality is equity, illustrates the first specification, and denies admission to the benefits without bearing rateably the burdens of the patent.

By the Court, SAWYER, J. :

This is an action to recover land. The defendant, after denying the allegations of the complaint, sets up an equitable title in himself to a portion of the land claimed, and by way of counter claim, asks that the plaintiff be adjudged to convey the legal title.

In September, 1855, after the lands herein mentioned had been surveyed by the United States, and the plats filed, one Snelling located State School Land Warrant Number One Hundred Ninety-Eight on a tract of three hundred and twenty acres, embracing a portion of the land in dispute. In January, 1857, said Snelling conveyed "all his right, title and interest" in said lands to plaintiff, Bludworth, and one Benjamin H. Moore. In August, 1857, said plaintiff, Bludworth, conveyed his "right, title and interest" therein to Ruffin A. Moore. In March, 1858, defendant, Lake, under a purchase from said R. A. and B. H. Moore, who were then in possession, for a sum of money then paid, with the knowledge and consent of said Moores, entered upon the land in controversy, which was at the time uninclosed and unimproved, and erected on it a wheelwright shop and a stable. Subsequently, in 1861, additions to the buildings were erected, and the defendant moved upon the land and resided there with his family. The wheelwright shop and stable were used by defendant for their appropriate purposes from the time they were put upon the premises till the date of this suit. But no part of the premises in dispute was inclosed by defendant till 1862, and the contract of sale was not put in writing by the parties, and no deed was ever executed by the Moores. The value of the improvements thus put upon the premises is three thousand dollars. On the 29th of November, 1858, and while the defendant was in the occupation of the land in the manner aforesaid, said Ruffin A. Moore reconveyed all his "right, title and interest" in the whole of the said three hundred and twenty acre tract to plaintiff, Bludworth. In 1859 Francis B. Snelling, through a foreclosure of a mortgage and sale thereunder, acquired the interest of B. H. Moore in said entire tract, and on the third day of January, 1861, said Francis B. Snelling, by one Fitz Hugh, his attorney in fact, executed an instrument purporting to be a conveyance of all his right, title and interest in said tract to said plaintiff, Bludworth, under which two several conveyances from Ruffin A. Moore and F. B. Snelling,

said plaintiff claimed to hold the entire interest in said tract. On the same day, January 3d, 1861, said plaintiff, Bludworth, conveyed all his right, title and interest in said tract to one Joshua H. Hall. Hall, on the same day, mortgaged back to Bludworth. These several conveyances described the land by metes and bounds, and, also, as the same located by School Land Warrant Number One Hundred Ninety-Eight. On the third day of December, 1861, said Hall quitclaimed to defendant, Lake, all that portion of said tract now in controversy. Thus, all the title and interest acquired by said Bludworth in the premises in dispute by said several conveyances, became vested in defendant, Lake, subject, only, to the said mortgage from Hall to Bludworth. In 1862 plaintiff, Bludworth, foreclosed Hall's said mortgage, purchased in the premises under the judgment, and in due time received the Sheriff's deed; but he did not make defendant, Lake, a party to the suit, and his interest was in no way affected by the judgment and sale in the action for foreclosure. All the deeds before mentioned were duly recorded about the time of their respective dates.

The plaintiff afterwards applied to the Register of the State Land Office for a patent, in pursuance of said location under said Warrant Number One Hundred Ninety-Eight. Upon presenting to the Register the evidence of title, so far as was necessary to show that the interest acquired by Snelling, by virtue of said location, had vested in him, he received the Register's certificate for a patent in August, 1864, and in September following, a patent from the State, duly issued to plaintiff, Bludworth, in pursuance of said location and certificate, embracing the portion of the premises in controversy aforesaid.

The State, by the Act of Congress, received a present grant of five hundred thousand acres of land, to be selected out of such lands as were open to selection, in such manner as the State, by its Legislature, should direct. "When the selection and location are once made, pursuant to the directions, of lands not reserved, but subject to location, the gen-

eral gift of quantity becomes a particular gift of the specific lands located, vesting in her a perfect and absolute title to the same; and that title passes by her patent." (*Doll* v. *Meador*, 16 Cal. 320; *Megerle* v. *Ashe*, 27 Cal. 328; *Megerle* v. *Ashe*, *ante* 74.) When the State issued Warrant Number One Hundred Ninety-Eight, and received the sum of money required to be paid therefor, it sold three hundred twenty of the five hundred thousand acres granted to the State by the Act of Congress, and authorized the holder, as the agent of the State, to locate it for his own benefit, upon any vacant and unappropriated land belonging to the United States, and subject to such location. The purchase was made, the consideration money paid by the purchaser and received by the State, and the warrant authorizing the location delivered. Henceforth the purchaser became the owner of the entire beneficial interest in that quantity of land. As soon as a valid location of the warrant was made, the right attached to the specific tract of land selected, and the legal title at once vested in the State of California, but for the benefit of the holder of the warrant located. The purchase from the State had already been made, and the land paid for. The State simply held the legal title, only, without any beneficial interest whatever, with authority in the State officers to execute a patent to the beneficiary—the real party in interest. The State held the legal title in trust, only, for the purchaser till the patent should issue. (*People* v. *Shearer*, 30 Cal. 648.) When Snelling, in this instance, made a valid location of Warrant Number One Hundred Ninety-Eight, he became the owner of the entire beneficial estate, and the State held the legal title in trust for him. Snelling was entitled to a conveyance of the legal title. When he conveyed all his right, title and interest in the land, he not only conveyed his beneficial interest, but his right to a conveyance of the legal title. The latter necessarily goes with the former. It is a part of the interest held at the time of his conveyance. The patent was finally issued to give effect to the right before acquired, and Bludworth took the legal title

charged with the trust in favor of the grantees of Snelling. By the patent plaintiff acquired no new interest of an adverse character subsequent to his conveyance to Hall, and the fact that said conveyance was only of his right, title and interest, instead of a bargain and sale of the land, cannot affect the question. The authorities cited by respondent to this point are, therefore, inapplicable. As to that portion of the land in dispute embraced in plaintiff's patent, the plaintiff had no beneficial interest in it. He only holds the naked legal title in trust for the defendant, and whether or not he intended to perpetrate a fraud in taking the title does not affect the question. He has obtained a title which it is inequitable for him to hold. The case of *Salmon* v. *Symonds*, 30 Cal. 306, is in point. We there said : " So far, then, as the patent vested the legal title in them, to that extent they had no right to it, and·they must be deemed to hold it in trust for the benefit of the real parties in interest. The law in such cases raises a trust in favor of the party entitled. Whether the title was thus taken by parties confessedly having no interest in that part of the land as a matter of convenience, * * * which seems to have been the case, or for any other reason, it is inequitable that they should avail themselves of their own act, in thus procuring the legal title, to appropriate the lands to their own use. In such cases a Court of equity will control the operation of the legal title for the benefit of the *cestui que trust.*" (Ib. 306–7 ; see cases cited ; also *Wilson* v. *Castro*, 31 Cal. 420 ; and Ad. Eq., Am. N., 36, N. 1.)

The failure of the defendant to appear before the Register of the Land Office and contest the plaintiff's right to a patent did not conclude him. The plaintiff owned nearly all of the tract patented, and to the extent of his ownership, at least, he was entitled to a patent. We know of no provision of the statute requiring defendant to litigate with plaintiff his claim to the small fraction in dispute before the Register, under penalty of losing his interest in the land upon failure to do so. Nor do we know of any provision authorizing the Register to divide up the tract located under a warrant, and issue sepa-

rate patents to each purchaser of a fraction of the land from the locator subsequent to the location, and prior to the issuing of the patent.

It has been settled by numerous decisions, that, under our system, a mortgage is not a conveyance of the land. The mortgagee takes no estate in the land mortgaged. He simply has a lien upon it for the security of his demand, which can only be enforced by a judgment for a sale of the property mortgaged, and a sale in pursuance of the judgment. (*McMillan* v. *Richards*, 9 Cal., 411, and numerous subsequent cases.) It is also equally well settled, that the title of the grantee of mortgaged premises, is not affected by a foreclosure and sale, in a suit commenced after the conveyance by the mortgagor, unless the grantee is made a party to the suit. (*Carpentier* v. *Williamson*, 25 Cal., 161, and cases cited.) Defendant was not a party to the foreclosure suit against Hall, and his interest was in no way affected by the judgment and sale in that case. The facts presented by the record give the plaintiff no equity to hold the legal title till defendant pays off the mortgage. He is under no personal obligation to pay. If plaintiff has any rights remaining under the mortgage, it is simply because he has a lien by virtue of the mortgage, without any personal responsibility on the part of the defendant; and his remedy is only such as he acquired under the law of the land by virtue of the mortgage contract.

We think the defendant equitably entitled to a conveyance of the title acquired by plaintiff under his patent from the State to so much of the land in controversy as is embraced in said patent.

The warrant was located long before defendant purchased. There is, therefore, no expense of procuring and locating warrant to be charged to him. It does not appear that any expense accrued in the issuing of the patent. If there was any, defendant should be charged with a proportionate part of such expense. The fact that no offer to pay his portion of such expense is made in the answer, is no obstacle to granting the affirmative relief sought in the answer. No such question

appears to have been made in the Court below.    The defendant's right to the land was the question litigated.

Ordered, that so much of the judgment as dismisses defendant's counter claim for affirmative equitable relief be reversed; and that the District Court be directed to enter judgment in favor of defendant, that the plaintiff, upon payment by defendant of his proper portion of any cost accruing for the issuing of the patent in pursuance of the location of School Land Warrant One Hundred Ninety-Eight, mentioned in the agreed statement of facts contained in the transcript, said portion to be ascertained by the Court, convey to the defendant by good and sufficient deed of conveyance all the title and interest acquired by plaintiff under said patent to that portion of the land in dispute embraced in said patent, and defendant to recover his costs of appeal.

Mr. Justice SHAFTER did not express an opinion.