[No. 7,419.—In Bank.]

| 57 | 70 |
|----|----|
| 77 | 209 |
| 57 | 70 |
| 97 | 455 |
| 57 | 70 |
| 104 | 6 |
| 57 | 70 |
| 136 | 496 |
| 57 | 70 |
| 146 | 544 |

# THOMAS F. LAUGENOUR v. J. W. SHANKLIN.

STATE LANDS—CONTEST—SURVEYOR-GENERAL—PATENT.—If a patent issues for land as swamp land, and the same land is a part of the 500,000-acre grant to the State, the patent is void, and does not deprive the Surveyor-General of the power to make an order referring to the appropriate Court a contest arising in his office between two or more contestants as to the right to purchase the land.

ID.—ID.—ID.—In such case, after the appropriate Court has made its judgment, the Surveyor-General cannot be permitted to call in question the evidence on which the judgment was based, nor the rulings of the Court on matters of law.

ID.—ID.—ID.—PARTY—MANDAMUS.—The statute does not contemplate that the Surveyor-General should be a party to the action; it is his duty to act in accordance with the judgment which may be made therein, and his compliance therewith may be compelled by mandamus.

ID.—ID.—ID.—INTERVENTION.—In such case, after judgment, new parties cannot come in to prevent the enforcement of such judgment. Section 387 of the Code of Civil Procedure does authorize an intervention under such circumstances.

*W. B. Treadwell*, and *W. C. Belcher*, for Plaintiff.

The judgment of the District Court is conclusive upon the contestants. (Pol. Code, § 3416; *Thompson* v. *True*, 48 Cal. 601.) It is also conclusive against the respondent. (Wells, *Res adjudicata*, §§ 16–20, 26–32, 169–174.)

*A. L. Hart*, Attorney-General, and *J. W. Shanklin* in proper person, for Defendant.

The judgment of the District Court is not an estoppel upon the respondent, for this action is not between the same parties,

and it involves new issues that were not tried by the Court in the former action. ( *Ward* v. *Flood,* 48 Cal. 36; *Le Roy* v. *Rogers,* 30 id. 229.)

*W. F. George, C. P. Sprague,* and *J. H. McKune,* for Hannagin, Intervenor.

The intervenor was not a party or a privy to the action in the District Court, and he is not bound by it. He has a direct interest in the matter in litigation in this application, and has a right to intervene herein. An application for a writ of mandate is a "proceeding," within the meaning of § 387 of the Code of Civil Procedure.

Ross, J :

This is an application for a writ of mandate to compel the Surveyor-General to approve the petitioner's application for the purchase of certain lands. The petition avers, that on the 15th of June, 1852, under and by authority of the provisions of the Act of the Legislature, entitled, " An Act to provide for the disposal of the five hundred thousand acres of land granted to this State by Act of Congress, that the people of the State of California may avail themselves of the benefits of the eighth section of the Act of Congress, approved April 4th, 1841, chapter 16, entitled, ' An Act to appropriate the proceeds of the sales of the public lands, and to grant pre-emption rights,' the following provisions are hereby enacted," approved May 3rd, 1852, the governor of the State duly signed and issued, among others, two certain land warrants for one hundred and sixty acres each, numbered respectively 434 and 550, and which were countersigned by the controller of the State, and by him deposited in the office of the treasurer of the State for sale; that afterwards, to wit, on the 1st of July, 1852, the said treasurer, under and by authority of the provisions of said act, upon an application to him therefor, sold the said warrants to the petitioner, and petitioner became the purchaser thereof, and paid therefor, into the treasury of the State, the sum of six hundred and fifty dollars in lawful currency of the United States; that on the 13th of July, 1864, the tract of land in question, containing three

hundred and twenty acres, and situated in Yolo County, and within the district of lands subject to sale at the United States Land Office at Marysville, was unappropriated land belonging to the United States, subject to location by said warrants, and was in the actual occupation of petitioner, and was unoccupied by any other person; that, at the date last mentioned, petitioner had improvements on said land, and there were not any improvements of any description thereon except those of the petitioner, nor was there then any valid claim to said land adverse to the claim of the petitioner; that, at said last-mentioned date, the said land was, and for more than three months prior thereto had been, surveyed by authority of the United States, and a plat of the township containing the same had been duly approved by the United States Surveyor-General for California, and filed in said Marysville Land Office; that, on the said 13th day of July, 1864, petitioner presented to and filed with the locating agent of said State, for said Marysville land district, his request and application to purchase said land from the State of California by the location of said land warrants thereon, which application was accompanied by the affidavit of petitioner, and the affidavits of three disinterested persons, that there was no valid claim existing upon said land adverse to the claim of petitioner, and that there were no improvements thereon except those owned by petitioner; that, at the time of filing said application and affidavits, petitioner surrendered to said locating agent, in payment for said land, the said land warrants; that, on the 14th of July, 1864, the said locating agent indorsed on said application his acceptance thereof, and thereafter, on the same day, made and filed with the Register of said United States Land Office at Marysville an application to the United States, on behalf of the State of California, for the said land, as a part of the grant of five hundred thousand acres of land made to said State by the Act of Congress, entitled, "An Act to appropriate the proceeds of the sales of the public lands, and to grant preemption rights," approved September 4th, 1841, and in accordance with the eighth section of said act, and specified in his said application that said land was to be taken by the location of said warrants 434 and 550; that, on the 24th of October, 1867, the said locating agent indorsed on the said application so made

by this petitioner, a certificate that he, said locating agent, had located the said land as a portion of the lands of the said State, at the request and for the use of this petitioner, and thereafter, on the same day, filed said application, with the accompanying affidavits and certificates, in the office of the Surveyor-General of said State, and then and there delivered to said Surveyor-General the said warrants; that, on the 3rd day of February, 1876, the said land was listed, approved, and certified by the United States to the State of California, as a part of said grant of five hundred thousand acres of land, which listing and certification was made under and in pursuance of the said application so made to the United States by said locating agent, and not otherwise, and the title to said land thereupon vested in said State, and has since remained so vested; that afterwards, to wit, on the 8th of February, 1877, and while said land so remained in the actual occupation of petitioner, and while the same remained so improved by him, one Tiery Wright filed in the office of the Surveyor-General of said State his application to purchase said land from said State, and that on the 17th of September, 1877, said Wright filed with the said State Surveyor-General a written demand, that the contest arising by reason of said applications of said Wright and of petitioner be referred to the proper tribunal for trial—whereupon, on the 18th of September, 1877, said Surveyor-General duly made and entered an order referring said contest to the Sixth Judicial District Court in and for Yolo County; that on the 21st of September, 1877, a duly certified copy of said order of reference was filed in the office of the clerk of said District Court, and thereafter, on the 22nd day of September, 1877, said Wright commenced an action in said Court against petitioner to determine said contest, which action was duly transferred to the District Court in and for the county of Sacramento; that such proceedings were had in said cause, that on the 26th of July, 1878, the said District Court in and for Sacramento County made and entered its decision and judgment therein, whereby it found and decided that the facts hereinbefore set forth were true, and that the said land had been sold by the said State to petitioner, and adjudged that petitioner's application for said land was good and valid, and that the said application of the said Wright was invalid,

and that he had no right to purchase the said land ; that subsequently, to wit, on the 20th of July, 1880, the said judgment of the District Court was, on appeal, in all things affirmed by the Supreme Court of said State, and a remittitur directed to be issued to the Superior Court thereof, in and for said county of Sacramento ; that, on the 4th of September, 1880, the remittitur was duly filed with the clerk of said Superior Court, and on the same day petitioner filed in the office of the said Surveyor-General duly certified copies of the judgment of said District Court and of the remittitur of said Supreme Court, and thereupon requested and demanded that said Surveyor-General approve the application of petitioner for the purchase of said land, which request and demand he refused to comply with, and still so refuses.

In answer to the petition, the Surveyor-General denies that on the 13th of July, 1864, the land in question was subject to location with the land warrants mentioned in the petition, or in any other manner, and denies that at any time after the 21st day of August, 1862, the said land was unappropriated land belonging to the United States, but avers, that at the date last mentioned a portion of the said land was " claimed to be the property of the State of California, and at said date the State of California, by the Executive thereof, and in pursuance of law, did issue and grant a patent for said land to one Tiery Wright, whereby the title to said last-described tract of land, so far as the State of California then had or should thereafter acquire title thereto, was vested in the said Wright." This patent is annexed to and made a part of respondent's answer, and shows affirmatively that it was issued for *swamp land*.

The respondent also, in his answer, denies that on the 13th of July, 1864, there was no valid claim existing upon the land described in the petition adverse to the claim of the petitioner, but alleges that the title to a portion thereof had been passed by the State to Tiery Wright, by virtue of the patent already mentioned.

Further answering, respondent denies that the copy of the final judgment, filed in his office by petitioner, "shows that the District Court,  *  *  *  or any other Court, decided or found in any cause whatever, that the land in the petition herein de-

scribed had been sold by the State to the petitioner herein," and denies that the petitioner ever made any legal application for the land in question, or that petitioner's application to the State locating agent was authorized by law, or that the latter had authority to make the location.

The only other defense to the application for the writ made by the respondent is, that by affidavits on file in his office the land in controversy is shown to be suitable for cultivation; and that petitioner has not shown that he is an actual settler thereon, which, respondent claims, he must do by reason of § 3 of article xvii of the present Constitution, before respondent is authorized to approve the application of petitioner.

Neither the denials nor the affirmative averments of respondent's answer, nor both combined, show sufficient cause for withholding the writ asked for.

1. There is nothing in the objection that the Surveyor-General had not the power to make the order of September 18th, 1877, referring the contest between petitioner and Wright to the proper Court for determination. The ground of the objection is, that the State had already issued a patent to Wright for a portion of the land. But that patent was for *swamp land*, and it is undisputed that all the land in question here formed part of the 500,000-acre grant. The patent therefore conveyed nothing. (*People* v. *Stratton*, 25 Cal. 242, and other cases in this Court.)

If, as is now urged by the Surveyor-General, that patent conveyed to Wright the title the State acquired to the land described in it, it is difficult to understand why the latter filed the application of September 17th, 1877, for the purchase of a portion of the same land, and thus brought about the contest which was determined adversely to him by the Courts. It is evident, however, that Wright knew, when he did so, that by the patent he got nothing.

2. The respondent cannot be permitted in this proceeding to call in question the evidence on which the judgment in *Wright* v. *Langenour* was based, or the rulings of the Court in that action on matters of law.

The Legislature, in § 3414 of the Political Code, has made provision for the reference, by the Surveyor-General, of such a

contest as arose in his office between the petitioner and Wright to the appropriate Court for determination; and further provided as follows: "Section 3415. After such order is made, either party may bring an action in the District Court of the county in which the land in question is situated, to determine the conflict, and the production of a certified copy of the entry made by either the Surveyor-General or the Register, gives the Court full and complete jurisdiction to hear and determine the action."

"Section 3416. Upon filing with the Surveyor-General or Register, as the case may be, a copy of the final judgment of the Court, that officer must approve the survey or location, or issue the certificate of purchase, or other evidence of title in accordance with such judgment."

When, under these provisions of the Political Code, a contest has been transferred to the Court for determination, the Court acquires "full and complete jurisdiction to hear and determine" the contest, and as a necessary result, the Surveyor-General has no longer the power to determine any question of law or fact involved in the matter—the very purpose of the law being, in such cases, to take from the Surveyor-General that power and to vest it in the Court. The sole duty of the Surveyor-General thereafter is that prescribed by § 3416: "To approve the survey or location, or issue the certificate of purchase or other evidence of title in accordance with" the judgment of the Court. It is not necessary, nor does the statute contemplate that the Surveyor-General should be a party to the action instituted to determine the contest. The law specially enjoins on his part action in accordance with such judgment, and his compliance therewith may be compelled by mandamus. (§ 3416, Pol. Code, and § 1085, Code Civ. Proc.)

That the title to the land in question here is in the State is not denied by the answer of the respondent, and that it was acquired by the location of the petitioner's land warrants, for which the State received the petitioner's money, is also not denied. The title thus acquired by the State was for the benefit of the petitioner (*Bludworth* v. *Lake*, 33 Cal. 262), and the State is estopped from denying it.

3. Section 3 of article xvii of the present Constitution has no application to this case, for the reason that the rights of the

petitioner attached to the land long prior to its adoption.   (Cases *supra.*)

4. The application of Hennagin to intervene in the proceeding must be denied.   His petition is based on an alleged application made by him on the 17th day of September, 1880, to purchase the land from the State.   There would be no end to cases of this character if, after judgment has been entered in an action to determine the right of contestants to purchase, new parties can come in to prevent the enforcement of such judgment.   Section 387 of the Code of Procedure does not authorize an intervention under such circumstances.

5. It having been determined by the Court in the action of *Wright* v. *Laugenour*, that the application of the petitioner for the purchase of the land in dispute was good and valid, and that the application of Wright therefor was invalid, it becomes the duty of the respondent, by virtue of § 3416 of the Political Code, to approve petitioner's application.

Let the writ issue as prayed for.

THORNTON, J., SHARPSTEIN, J., and MYRICK, J., concurred.