[No. 9785.   Department One. — April 21, 1887.]

# J. S. MANLEY, APPELLANT, v. J. F. CUNNINGHAM, RESPONDENT.

STATE LANDS — LANDS SUITABLE FOR CULTIVATION. — The phrase "lands belonging to the state which are suitable for cultivation," as used in section 3 of article 17 of the constitution, includes all lands ready for occupancy, and which, by ordinary farming processes, are fit for agricultural purposes.

ID. — LAND PARTLY COVERED WITH TIMBER. — The land in controversy is situated in the Santa Cruz Mountains, about six miles from the coast, and is difficult of access on account of the absence of roads. Its surface is rolling and uneven, but not steep, and its soil of a rich nature. The greater portion of the surface is covered with brush and redwood timber, which would have to be removed before the land could be plowed. There are, however, spaces and openings, aggregating less than one half, ready for plowing. The land has a distinct value for its timber, but would be more valuable for agricultural purposes after the timber was removed. *Held*, that the land was suitable for cultivation within the meaning of the constitution.

ID. — ACTUAL SETTLER — SALE MUST BE MADE TO — CONSTITUTIONAL LAW. — Section 3 of article 17 of the constitution, limiting the sale of state lands suitable for cultivation to persons who are actual settlers thereon, prohibits a sale of such land to a non-settler, notwithstanding his application to purchase was made before the constitution took effect.

ID. — ACTION TO DETERMINE CONTEST — PLAINTIFF CANNOT RECOVER UPON INSUFFICIENCY OF DEFENDANT'S CASE. — In an action to determine a contest as to the right to purchase certain state lands, the plaintiff, not having shown a right to purchase in himself, is not entitled to recover because of the insufficiency of the allegations or proof of the defendant.

APPEAL from a judgment of the Superior Court of Santa Cruz County.

The facts are stated in the opinion of the court.

*Garber, Thornton & Bishop,* and *A. O. Colton,* for Appellant.

*J. M. Lesser,* and *J. H. Logan,* for Respondent.

PATERSON, J. — This is an appeal from a judgment of the Superior Court of Santa Cruz County, in favor of the defendant. The case arises out of a contested claim

to purchase certain state lands referred to that court as the successor of the District Court, for determination, upon the application of the plaintiff under section 3414 of the Political Code. The case was tried by the court below without the intervention of a jury, and the facts fully appear from the findings, which are not excepted to, the appeal being simply from the judgment. The lands in controversy are contiguous subdivisions of section 1, township 9 south, range 4 west, Mount Diablo base and meridian, aggregating 320 acres, and being lands granted to the state in lieu of the north half of section 36, township 9 north, range 18 west, San Bernardino meridian, lost to the state by a prior grant. These lands were duly surveyed, accepted, and listed, and were certified to the state by the honorable Secretary of the Interior, on August 30, 1869. The plaintiff's application to purchase said lands was filed in the office of the surveyor-general of the state, August 14, 1878, and was in due form, and was accompanied by an affidavit setting forth all the facts required by the statute then in force. The application contained, among other things, a clause whereby the plaintiff expressly agreed to pay for the land $1.25 in gold or silver coin, in the manner and at the time prescribed by statute, and that in case of non-payment of the first installment within the statutory period, the lands should "revert" to the state without suit. The legal fee was duly paid by the plaintiff on the filing of the said application. The court finds also that the facts stated by the plaintiff in his application and affidavit as to his qualifications to purchase are all true, and that there is no other valid claim to the land, except it be that of the defendant. The defendant's application and affidavit were filed December 31, 1872, setting forth that he was a citizen of the United States, a resident of the state, and over twenty-one years; that he desired to purchase the land " under the provision of an act of the legislature of said state, entitled 'An act to provide for the manage-

ment and sale of land belonging to the state,' approved March 28, 1868, and the various acts amendatory thereof and supplementary thereto "; that there was no adverse occupancy of the land, and that he agreed to pay for the same in the manner provided by law, etc. The defendant also paid the legal fee to the surveyor-general, and his application was received and filed, and afterwards approved by said surveyor-general. Thereafter, on February 25, 1876, after the determination in his favor of a contest with one Crowley, hereinafter mentioned, a certificate of purchase was issued to defendant by the register of the state land-office, December 4, 1875, and the defendant was the holder of said certificate when the plaintiff's application was filed, as before stated. After the plaintiff's application was filed, he demanded of the surveyor-general that the contest between himself and the defendant be referred to the courts for adjudication. Thereupon, on said day, the surveyor-general and *ex officio* register of the state land-office made and entered in the record books of his office an order referring said contest to the Superior Court of Santa Cruz County for trial, and a certified copy of said order was filed in the clerk's office of said Superior Court on September 8, 1881. The plaintiff filed his complaint in this action in said court on October 24, 1881. The complaint sets out the above-recited facts; alleges that the land is not suitable for cultivation; that the defendant's application and certificate of purchase are without authority and void, and prays the court so to adjudge, and also to adjudge that the defendant is not entitled to purchase the said land, but that the plaintiff is; that his application be approved, and that upon his making payment a certificate be issued to him.

The answer denies all the allegations of the complaint, and sets out a separate defense to the effect that, on September 10, 1868, one Crowley had filed in the office of the state locating agent an application to purchase the

land in controversy; that the land was afterward, in 1870, duly listed, certified, and conveyed to the state; that on December 31, 1872, the defendant filed his application to purchase, as above stated; that a contest thereupon arose between himself and the said Crowley before the register of the state land-office, which, upon his demand, was referred to the District Court in and for Santa Cruz County for determination; that thereafter, upon a complaint filed by him in said District Court, such proceedings were had that the said contest was decided in his favor, and on August 1, 1874, a judgment was duly entered, whereby it was ordered, adjudged, and decreed that the said defendant, Cunningham, was entitled to purchase the said lands; and his application should be approved, and the surveyor-general approve the same and issue to him a certificate of purchase; and that on February 25, 1875, the state sold him the said land, and the surveyor-general, as *ex officio* register, issued to him a certificate of purchase. The defendant also filed a cross-complaint, setting out the facts as to his own application, etc., and that of the plaintiff, and the reference of the contest between them, and praying a determination of said contest in his favor. There is also a supplemental answer, alleging the issuance of a patent to the defendant, pursuant to his certificate of purchase on April 7, 1882. The defendant appealed from the decision of the District Court in said cause of *Cunningham* v. *Crowley*, and on the appeal the judgment was affirmed. The opinion of this court is reported in 51 Cal. 128.

The following is the finding of the court below as to character of the land:—

" That said lands are situated in the Santa Cruz Mountains, about six miles from the coast, difficult of access, for the reason that there are not any roads leading thereto. The surface is rolling and uneven, but not steep; soil of a rich nature; a greater portion of the surface is covered with brush and redwood timber, which must be

removed before the land can be plowed. This would involve very considerable outlay. There are spaces and openings, aggregating somewhat less than one half, ready to be plowed. The land now has a distinct value for its timber, but when the timber shall have been removed, will be more valuable for agricultural purposes. For these reasons, and none other, the court finds that at the time of filing plaintiff's application said lands were and still are suitable for cultivation; that there never has been any actual settlement by plaintiff, or any person, and neither plaintiff nor any person ever was an actual settler or resident on said lands, or any part thereof."

Article 17, section 3, of the constitution, reads as follows:—

" Lands belonging to this state, which are suitable for cultivation, shall be granted only to actual settlers, and in quantities not exceeding 320 acres to each settler, under such conditions as shall be prescribed by law."

In support of his proposition that the lands are not fit for cultivation, appellant claims:—

" 1. That, as appears from the findings, the lands are in reality timber lands in the Santa Cruz Mountains, without any roads leading thereto, and therefore ' difficult of access'; and that the conclusion of the court that because the soil is of a rich nature the lands are ' suitable for cultivation,' although it is declared that the greater part of it cannot be plowed until the timber is removed, is wholly unwarranted.

" 2. That the terms ' suitable for cultivation,' logically and etymologically, mean presently or immediately fit for tillage, without other preparation than appertains to the ordinary operations of husbandry, and cannot apply to timber lands incapable of cultivation until the timber is removed."

We are unable to agree with appellant in his interpretation of the phrase " suitable for cultivation," as used in section 3, or his conclusion as to the effect of the seventh

finding of the court. On the contrary, we think that the elements and conditions stated in the finding bring the land in controversy within the classes intended by the framers of the constitution to be reserved for actual settlers. It was intended by this section to provide that the public lands should be held and disposed of, so far as possible, to those who will live upon and cultivate them; that they should be used to encourage the immigration of industrious people who will utilize and improve the lands, and, by building up homes and engaging in husbandry, add permanently to the wealth and prosperity of the state.

The phrase "lands belonging to this state suitable for cultivation" includes all lands ready for occupation, and which by ordinary farming processes are fit for agricultural purposes. The language of the section is used in the sense that it has always been employed in reference to the public domain. Some of the richest agricultural lands of the country have been acquired under the preemption laws, and yet they were covered with timber, brush, or prairie sod, which rendered them incapable of immediate cultivation.

In a recent letter to Commissioner McFarland, the Secretary of the Interior says:—

"All timber lands are unfit for cultivation in their natural condition, but if they may be redeemed and made susceptible of cultivation by ordinary farming process, they are not, in my opinion, within the purposes of this act, which was intended to embrace within its provisions timbered tracts only in broken, rugged, or mountainous districts, with soil unfit for ordinary agricultural purposes when cleared of timber." (10 Copp's Land Owner, 73; *Hughes* v. *Tipton*, 11 Copp's Land Owner, 8.)

It is said that this construction of the section will include swamp and overflowed lands which are rich in soil, and that it will require actual settlement thereon

before purchase. But no lands can be included that are unfit for actual occupancy. It was not intended that the purchaser should live upon the water or make his home in a swamp. It would be singular, indeed, if the state should require such lands to be reclaimed so as to make them fit for residence for the actual settler before it could entertain an application by the purchaser. Such a condition would, of course, place a complete embargo on all sales of those lands, and the state would thereby defeat the very purposes of the grant by which it took them.

Now, if we are correct as to the object, meaning, and intent of the section referred to, the reasons or facts given by the court for its ultimate finding that the lands are suitable for cultivation must be good and sufficient. The soil is of a rich nature; the surface is not steep; nearly one half is now ready for the plow; when the timber is removed, the land will be more valuable for agricultural purposes; the lands are within six miles of the ocean, and in the Santa Cruz Mountains; they are difficult of access—not impossible—only because there are no roads, and the disadvantages arising from the fact that there is some brush on the place are more than off-set by the redwood timber, from which can be secured material for fencing, building, and fuel.

The second point made by appellant, viz., that this section cannot be given a retrospective operation, has been fully considered in former decisions of this court. We have stated the facts of this case, and deem it unnecessary to review the decisions. (*Johnson* v. *Squires*, 55 Cal. 103; *Urton* v. *Wilson*, 65 Cal. 13; *Dillon* v. *Saloude*, 68 Cal. 267.) The plaintiff has not paid any part of the purchase price; therefore *Laugenour* v. *Shanklin*, 57 Cal. 76, and *Bludworth* v. *Lake*, 33 Cal. 262, do not apply.

It is said that the finding as to settlement is outside of the issues; that plaintiff did not allege he was an actual settler, and defendant should have alleged that plaintiff was *not* an actual settler if he desired to rely on the fact.

It must be remembered, however, that the plaintiff alleged and proceeded upon the theory that the land was not suitable for cultivation. If he had succeeded in proving this allegation, the question of settlement would have been immaterial. It devolved upon the plaintiff to allege and prove either that the land was not suitable for cultivation, or that, being suitable for cultivation, he was an actual settler or resident. The plaintiff cannot recover because of the insufficiency of the allegations or proof of the defendant.

In this case the court below did not award to defendant the right to purchase, and the defendant is not here complaining of the judgment.

Judgment affirmed.

McKINSTRY, J., and TEMPLE, J., concurred.