[Sac. No. 1280.   Department One.—February 17, 1906.]

# LOUISE E. BOGGS, Executrix, etc., et al., Respondents, v. THOMAS H. GANEARD, Appellant.

State Lands—Suitableness for Cultivation—Construction of Constitution.—The provision of section 3 of article XVII of the constitution, that ''lands belonging to this state which are suitable for cultivation shall be granted only to actual settlers,'' speaks with reference to the condition of the land at the time of the initiation of proceedings for purchase, without reference to its previous condition of unsuitableness for cultivation, or the manner in which it became suitable therefor.

Id.—Swamp and Overflowed Land—Reclamation by Settler—Prohibited Sale Invalid.—Where the land in question was segregated as swamp and overflowed land by authority of the United States, and prior to defendant's application to purchase it as such it had been reclaimed by a settler thereon, by means of ditches, embankments, and levees constructed by plaintiffs and their grantors, and made suitable for cultivation, any sale of the land to the defendant, who was not an actual settler thereon, is forbidden by the constitution, and is void.

Id.—Approval of Purchase by Surveyor-General—Certificate of Purchase—Subsequent Inquiry not Precluded.—The *ex parte* approval by the surveyor-general of an application to purchase swamp and overflowed land, and the subsequent execution of the certificate of purchase and payment of the purchase price, do not preclude a subsequent inquiry as to the right of the applicant to purchase the land, which may be determined in an authorized proceeding at any time prior to the issuance of the patent.

Id.—Constitutional Law — Obligation of Contracts — Amendment Allowing Contest by Settler—Additional Remedy.—There having been a previous remedy upon contest of any subsequent applicant to determine the validity of a certificate of purchase, the amendment of March 2, 1903, to section 3443 of the Political Code, which permits a contest by a previous settler who comes within its terms against a previous purchaser at any time prior to the issuance of patent, in so far as it authorizes an inquiry as to whether the land was suitable for cultivation, and whether the applicant was a settler thereon, merely gives a new and additional remedy, which does not impair the obligation of the contract of purchase or any existing legal right of the defendant.

ID.—Practice of Court—Copies of Affidavits—Special Legislation.
—The amendatory act does not violate the provision of the con-
stitution forbidding special laws regulating the practice of the
courts merely because it requires the settler to set forth in his
complaint copies of the affidavits filed by himself upon instituting
the contest, and by the applicant before the surveyor-general, to
enable the court to determine what questions have been properly
referred to it for adjudication. Such provision of the act is justified
by the nature and object of the proceeding.

APPEAL from a judgment of the Superior Court of San
Joaquin County and from an order denying a motion to vacate
the same. George E. Church, Judge.

The facts are stated in the opinion of the court.

John B. Hall, for Appellant.

Nicol & Orr, and Plummer & Dunlap, for Respondents.

ANGELLOTTI, J.—This proceeding, involving the question
as to the right of defendant to purchase from the state, as
swamp and overflowed land, a tract of land containing 159.98
acres, was instituted in the superior court of San Joaquin
County, under an order of reference made by the surveyor-
general under the provisions of section 3443 of the Political
Code, relative to the purchase of swamp and overflowed land,
as amended March 2, 1903. Judgment was given decreeing
that defendant was not entitled to purchase the land and can-
celing his certificate of purchase. Defendant appeals from
said judgment and from an order denying his motion to vacate
the same and enter judgment for him upon the findings, made
under sections 663 and 663½ of the Code of Civil Procedure.
The appeals come before us on the judgment-roll and a bill
of exceptions showing the proceedings on the motion to vacate
the judgment.

The question presented is as to whether the facts shown by
the pleadings and findings are sufficient to support the judg-
ment. The land in question was segregated as swamp and
overflowed land by authority of the United States, prior to
December, 1879. No application for the purchase thereof
other than that of defendant, has ever been made, plaintiffs not
having applied to purchase the same, and not now seeking
to purchase. Defendant's application was made on September
21, 1901. Defendant was not an actual settler on the land,

but in all other respects he was qualified to purchase. His affidavit of application was, upon its face, in due form, and sufficient to show his right to purchase this land, being in strict conformity with the requirements of section 3443 of the Political Code. His affidavit was claimed to be false in regard to one matter stated therein,—viz., that he knew of his own knowledge that there were no settlers on the land. The law then required, as it ever since has, that the affidavit should state that he knew "of his own knowledge that there are no settlers" on the land, "or, if there are, that the land has been segregated more than six months by authority of the United States." The affidavit also showed that the land had been so segregated. The applicant paid to the surveyor-general the required fee, and subsequently, his application having been approved, paid the full purchase price, $159.98, and was given a certificate of purchase, bearing date March 20, 1902. On March 14, 1903, no patent having been issued to defendant, plaintiffs filed in the office of the surveyor-general their affidavit, setting forth that at the time of the filing of defendant's application, and for more than ten years next prior thereto, they and those under whom they claim, were in the possession and occupancy of said land for farming purposes, such occupancy and possession being open and notorious and evidenced by ditches, embankments, and levees showing the actual extent thereof, and had, at the time of the filing of defendant's application, actually reclaimed such land and reduced the same to a state of cultivation "by a system of levees and ditches constructed and maintained at great expense by affiants and those under whom they claim," and had been farming and cultivating the same. The affidavit further stated that defendant's affidavit of application was false, in that he therein stated that he knew of his own knowledge that there were no settlers on the land, when, in truth and in fact, there were, and for more than ten years next prior thereto there had been settlers on said land. Upon this affidavit, the surveyor-general made his order referring the question raised thereby to the superior court of San Joaquin County, and plaintiffs, within thirty days thereafter, commenced this action to determine the same.

According to the findings of the court, all the allegations in plaintiffs' affidavit as to their use of the land, and the condition at the time of defendant's application are true, and the

court expressly found that at the date of defendant's application, and for more than ten years prior thereto, the land was "suitable for cultivation," having been "reclaimed by means of ditches, embankments, and levees by the grantors of plaintiffs," that "no part of said lands had been reclaimed or reduced to a state of cultivation by any swamp land district," and that defendant had never been a settler on said land. It further found that defendant's affidavit was false in the respect stated in plaintiffs' affidavit, and gave judgment in the manner hereinbefore specified.

Disregarding for the moment all questions as to procedure, and the right of persons not in privity with the state to question the right of defendant to purchase, we are satisfied that it must be held, upon the record before us, that the land was at the date of defendant's application, "suitable for cultivation," within the meaning of those words as used in section 3 of article XVII of our constitution, and that by reason of that fact, any sale of the land to defendant was forbidden, he not being an actual settler thereon. It is provided in that section that "lands belonging to this state, which are suitable for cultivation, shall be granted only to actual settlers." That this land was in fact suitable for cultivation at the time of such application cannot be disputed under the findings of the court. Defendant's claim that it was not such within the meaning of the constitutional provision is based upon the fact that it was originally unfit for cultivation, and has been reclaimed and made suitable for cultivation not by natural causes, but by the hand of man, the findings showing that it was so changed "by means of ditches, embankments, and levees," constructed and maintained by plaintiffs and their grantors. If the doctrine of *Fulton* v. *Brannan*, 88 Cal. 454, [26 Pac. 506], is to be adhered to in the future as it has been ever since that decision was rendered, it would appear to be immaterial how the land was made suitable for cultivation. That case certainly determined that neither the condition of the land designated as swamp and overflowed at the time of its cession to the state, nor its condition at the time of the adoption of the constitutional provision, as to suitability for cultivation, was controlling. The land there involved was covered with water until several years after the adoption of the constitutional provision,

when it became reclaimed by natural causes. When it is settled that the constitution speaks without reference to the condition of the land at either of these times, it must follow that it speaks with reference to the condition at the time of sale, or, rather, the initiation of the proceedings for purchase. And so this court expressly declared in *Fulton* v. *Brannan,* 88 Cal. 454, [26 Pac. 506], where, discussing and approving a prior decision involving land of another character (*Manley* v. *Cunningham,* 72 Cal. 236, [13 Pac 622], it said: "If this decision is to stand as expressive of the law of this state, all swamp lands which, *at the time application was made for their purchase,* were fit for human habitation, and by ordinary farming processes can be made suitable for cultivation, can be sold only to actual settlers, and in quantities not exceeding three hundred and twenty acres." (The italics are ours.) The rule there expressed has never been departed from, and in all subsequent cases the condition of the land at the time of application for purchase has been taken as the controlling factor, in determining whether the land fell within the operation of the constitutional provision.

The constitution thus speaking with reference to the condition at the time of application, it must follow that it is absolutely immaterial how land in fact suitable for cultivation at that time, became so. The constitution includes all lands in its classification into two classes only. All land not suitable for cultivation is in one class, and all land suitable for cultivation in the other. With reference to the question of granting to actual settlers only, there is no subclassification of the latter class authorized by the constitution, and neither the legislature nor the courts can make such a classification of lands in fact suitable for cultivation, based upon the manner in which they became suitable. (See *Fulton* v. *Brannan,* 88 Cal. 456, [26 Pac. 506]; *Albert* v. *Hobler,* 111 Cal. 398, 400, [43 Pac. 1104].) The constitutional prohibition is applicable to all lands suitable for cultivation at the time of application, —i. e. to all lands which, at such time, are ready for occupation, and which, by ordinary farming processes, are fit for agricultural purposes. (*Manley* v. *Cunningham,* 72 Cal. 236, 241, [13 Pac. 622].) The question discussed in *Fulton* v. *Brannan,* 88 Cal. 456, [26 Pac. 506], as to what lands not reclaimed at the time of the application may be considered

lands suitable for cultivation within the meaning of the constitution, is not involved here. In the determination of such a question the method and expense of the necessary future reclamation work are of course material factors, but they can play no part where the land has actually been reclaimed and made suitable for cultivation at the time of the application to purchase.

This land falling within the class specified in the constitutional provision quoted above, at the time of defendant's application to purchase, its sale to him was at such time prohibited, he not being an actual settler thereon. It would appear to follow that he acquired no enforceable right to the land by reason of his application, payment, and certificate of purchase, all made at a time when the law absolutely prohibited the sale to any except an actual settler. There is nothing in the law that gives such effect to the *ex parte* approval by the surveyor-general of an application to purchase swamp and overflowed land, the subsequent execution of the certificate of purchase, which is at most simply evidence of a contract to convey, and payment of the purchase price, as would preclude a subsequent inquiry as to the right of the applicant to purchase. Payment for the land and a certificate of purchase based upon valid proceedings taken in that behalf undoubtedly confer rights upon the applicant which cannot afterward be impaired by the state, and this is the whole effect of the decisions to the effect of certificate and payment, relied upon by defendant. One qualified to purchase certain land under the law existing at the time of his application, complies with all the requirements of the law, pays for the land and receives his certificate. He thereby becomes entitled to a patent, and no subsequent constitutional or statutory enactment will be effectual to deprive him of the acquired right. As to him. the state is simply a trustee of the legal title. But any question as to the validity of the proceedings upon which the applicant bases his claim, may be raised and determined in any authorized proceeding at any time prior to the issuance of patent. The applicant has no such vested right as forbids such inquiry. His claim to an enforcement of the contract must be based entirely upon the theory that his proceedings were valid, that he was at the time of application qualified to purchase the land and that he complied with the then existing law relative to purchase, and his certificate of purchase is at most only

*prima facie* evidence of this. No law in force at the time of defendant's application or since enacted gave it any greater effect. The fact that under the law an applicant was not, at the time of his application, qualified to purchase the land, or did not comply with the then existing law regarding such applications, being made to appear in any authorized proceeding, his proceedings to purchase will be held void *ab initio.*

The decisions of this court in which the proceedings taken by the holder of the certificate of purchase have been held ineffectual to confer any right, either because the applicant was not qualified to purchase, or because he had not complied with the law relative to such applications, are so numerous, and the rule applicable is so well settled, that it is unnecessary to cite authorities. In at least three cases it has been expressly held, overruling a contrary contention, that the certificate of purchase does not bar an inquiry into the rights of the purchaser. (*Gilson v. Robinson*, 68 Cal. 539, 542, [10 Pac. 193]; *Jacobs* v. *Walker*, 76 Cal. 175, [18 Pac. 129]; *Taylor* v. *Weston*, 77 Cal. 534, 541, [20 Pac. 62].) It is true that the cases were generally contests as to the right to purchase initiated under statutory provisions authorizing the same, by persons who had also made application and were also seeking to purchase, but they all recognize the fact to be that neither certificate nor payment forecloses inquiry into the validity of the proceedings upon which the applicant bases his claim to a conveyance, and that his claim must fail, as absolutely void, whenever properly questioned, and it is shown that he was not entitled to purchase. In some of such contests, judgment was denied to the holder of the certificate, although the one claiming as against him the right to purchase was also adjudged to be not entitled. *Goldberg* v. *Thompson*, 96 Cal. 117, [30 Pac. 1019], is such a case. The court there adjudged that neither party was entitled to purchase certain swamp and overflowed land, although Thompson held the certificate of purchase, upon the ground that the land had become suitable for cultivation prior to application, and neither party was an actual settler thereon, and this, although the finding of the court as to suitability for cultivation was outside the issues made by the pleadings. The court there said: "If land is of the class which can be sold only to residents, and neither contestant is a settler, the court cannot ignore the character

of the land and the question of residence because it is convenient for the parties to do so. On the contrary, it must decide against both if neither is entitled to purchase.'' While the legislature has seen fit to make a certificate of purchase *prima facie* evidence of title, it has been held that such a certificate will not avail in ejectment against a third party in possession of the land, who shows that the land was suitable for cultivation at the time of the application upon which the certificate was issued, and that the applicant was never an actual settler on the land. (*Miller* v. *Prentice,* 82 Cal. 104, [23 Pac. 8]; *Trimmer* v. *Bode,* 82 Cal. 647, [23 Pac. 136].) The effect of all the decisions plainly is that proceedings for the purchase of land from the state, taken by one not qualified to purchase, confer no right whatever to the land, notwithstanding payment of the purchase price and issuance of certificate of purchase.

In view of our conclusions upon the questions already discussed, the remaining questions which must here be determined are easy of solution. They relate principally to the proposition as to whether or not the amendment of March 2, 1903, (Stats. 1903, p. 67, c. 61), to section 3443 of the Political Code, providing for contests and their reference for adjudication to the superior court, can be held to apply in cases where the application to purchase was made and certificate issued prior to its adoption, as was the situation here. By its terms it was expressly made to apply to all cases, regardless of the time of application, and the claim here is that giving it the intended effect would render it violative of the constitutional provisions prohibiting the passage of any law impairing the obligation of a contract. Concededly, the contest here was within the terms of the amendment. Substantially, the amendment provides as follows: Any false statement in the affidavit of the applicant defeats his right to purchase. At any time prior to the issuance of patent, upon it being made to appear to the surveyor-general by the affidavit of any settler or person occupying the land for farming purposes, that he, or those under whom he claims, have been in the possession and occupancy of such land, or any part thereof, for farming purposes, for over ten years next preceding the application of the other party, their occupancy being open and notorious, and evidenced by actual inclosure or ditches, monuments, embank-

ments, or levees showing the actual extent thereof, and that they or those under whom they claim had, at the time of the other party's application, actually reclaimed such land and reduced the same to a state of cultivation, or that the affidavit filed by such applicant "is false in any of the statements made therein," the surveyor-general shall refer the questions raised by such affidavits to the superior court of the county in which the land or some part thereof is situated. Within thirty days thereafter, the person initiating the contest shall commence action in such court to determine the same. Pending final judgment therein, all proceedings in the surveyor-general's office respecting such lands shall be stayed. If upon the trial it shall appear that any of the statements made in the affidavit of the person desiring to purchase were false, or if it shall appear that the statements made in the affidavit of the settler or occupant are true, the approval of location or certificate of purchase, if any has been issued, shall be canceled by the judgment, and the surveyor-general, upon the filing of a copy of such judgment with him, must enter an order of cancellation accordingly. If, however, it shall appear that the affidavit of the purchaser is in all respects true, and the statements made in the affidavit of the settler or occupant are untrue, it shall be so adjudged, and the surveyor-general shall issue evidence of title in accordance with such judgment. It will be observed that under the terms of this provision, except in the case of false statements in the affidavit of the applicant, it is essential to a determination against the applicant that the land had actually been brought to a state of cultivation at the time of the application, and was, at such time, in the possession of another. It may here be assumed that any false statement in defendant's application to the effect that he knew of his own knowledge that there were no settlers on the land was immaterial, in view of the further stated fact that the land had been segregated more than six months, and also that the provision of the amendment authorizing the cancellation of the certificate for any false statement in the affidavit, however immaterial, could not apply to cases where payment had been made and certificate issued prior to its enactment. It is not necessary to express any opinion upon these questions. In so far as it authorizes an inquiry as to whether·

the land was suitable for cultivation at the time of the application, and as to whether the applicant was an actual settler thereon, it simply provides an additional method, by which, before a competent court and upon due process of law, the question as to the right to purchase may be determined, and by which, if it be found that his proceedings were invalid, they may be adjudged to be of no effect.

Under the law as it was at the time of his application, defendant's right to purchase this land was subject to question at any time prior to the issuance of patent. We have already seen that any other person, by simply presenting an application for purchase and demanding a trial in the superior court, could have initiated a contest wherein the application of defendant would have been declared void by the court, although the contestant himself might also have been held not entitled to purchase. Doubtless, the state might at any time have maintained an action for the same purpose. The amendment in this respect does no more than to authorize the same inquiry as to the validity of the proceedings to be made at the instance of and by private persons who have not sought to purchase the land. Such a proceeding, although maintained by private parties, is really for the benefit of the state, being in furtherance of and for the enforcement of its declared policy that lands suitable for cultivation should be granted only to actual settlers, and the party maintaining the same is, in effect, but the agent of the state, performing a duty allotted to him by the laws of the state. The adoption of this additional method of ascertaining as to the validity of defendant's claim, in no way affected any right guaranteed him by the constitutional provision invoked. He had no right to purchase this land if it was suitable for cultivation at the time of his application and he was not then an actual settler thereon. He had no vested right as to the precise mode and manner of inquiry concerning its suitability for cultivation, as long as he was given an opportunity, upon proper notice and before a competent tribunal, to answer any attack made upon his claim in this respect, as fully and effectually as he could have done under the laws in force at the time of his application. A change in the law to this extent affects only the remedy, and disturbs or impairs no existing legal right. The cases

uniformly hold that as long as vested rights are not impaired, retrospective laws giving new and additional remedies for existing rights, or giving a remedy at law where one previously existed in equity only, or *vice versa*, are valid. As said in *Rich* v. *Flanders*, 39 N. H. 304, a party has no right to complain of these things as violations of the constitution so long as the laws leave him a competent court bound to administer justice to him according to the rights the law gave him, when his right of action or defense became invested. (See, also, *Hepburn* v. *Curts*, 7 Watts (Pa.) 300, [32 Am. Dec. 760] ; *Scheftley* v. *Commonwealth*, 36 Pa. 29, [78 Am. Dec. 359] ; *Sampeyreac* v. *United States*, 7 Pet. 222, 238, *Paschall* v. *Whitsett*, 11 Ala. 472; *Curtis* v. *Whitney*, 13 Wall. 68; *Oullahan* v. *Sweeney*, 79 Cal. 539, [21 Pac. 960, 12 Am. St. Rep. 172].) So far as the question under discussion is concerned, it is entirely immaterial what person or class of persons may be authorized to initiate such an inquiry, or what may be their relation to the land involved. Having the right to provide for the inquiry as to whether the claim of the applicant is valid in such manner as it sees fit, subject to the limitation as to impairment of vested rights, the state may authorize such an inquiry to be instituted and maintained by any officer or person or class of persons. Whoever is so authorized is simply made the agent of the state for that purpose. It is of no concern to the claimant who is so designated. Whoever the person designated is, the claimant is only called upon to meet the claim of the state, made through its agent, that, by reason of the land being suitable for cultivation and he not being an actual settler thereon, the attempted proceedings for its purchase by him are void, and confer no right.

We are of the opinion that there is nothing in the contention that the amendatory act violates the provision of our constitution relative to special laws regulating the practice of courts of justice. The right of the legislature to provide a special proceeding in the courts for the determination of questions as to the validity of proceedings for the purchase of its public lands, and to make different provisions for the various classes of such lands, has long been recognized, and cannot be doubted. The nature of the subject is such as to justify such provision. (See *Deyoe* v.

*Superior Court,* 140 Cal. 476, 481, [74 Pac: 28, 98 Am. St. Rep. 73].) So far as we can see, the ordinary rules as to practice, pleadings, and evidence, including motion for new trial and appeal, are all recognized by the statute as applicable to the proceeding here authorized, and no change is therein attempted, except in the single particular that the statute requires the contestant to set forth in his complaint copies of the affidavits filed by himself and the applicant before the surveyor-general. This is for the purpose of enabling the court to determine what questions have been properly referred to it for adjudication, and is justified by the nature and object of the proceeding. The judgment of cancellation provided for is, in effect, simply a determination upon the question as to the right of the applicant to purchase the land.

It is unnecessary to discuss any of the other questions presented. It being determined that the amendment to section 3443 of the Political Code is a valid law, and, so far as it authorizes judicial inquiry and final determination, at the instance of a settler or occupant of the land for farming purposes, as to its suitability for cultivation at the time of the application, and the applicant's qualifications to purchase the same, applicable in cases where the application was made prior to its enactment, it follows that the superior court had jurisdiction of the proceeding, and that the findings support the judgment.

As to the validity of the provisions of the amendment regarding any false statement in the affidavit of the applicant, as applied to applications made and certificates issued prior to their enactment, we express no opinion.

The judgment and order appealed from are affirmed

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.