[No 13049.   Department Two. — June 30, 1891.]

ABNER D. JACOBS, APPELLANT, v. J. B. WALKER, RESPONDENT.

STATE SCHOOL-LANDS — ILLEGAL APPLICATION — FALSE AFFIDAVIT — ADVERSE OCCUPATION. — An applicant for the purchase of school-lands acquires no right in the land which can be enforced in the courts if the statement in his affidavit for the purchase, that there was no adverse occupation of the land, is found to be untrue.

ID. — CONTEST — JUDGMENT — LAND NOT INCLUDED IN CONTEST. — In an action to determine the right of purchase of school-lands between adverse claimants, where one of the parties applied for more land than the other, and there is no contest as to the additional land, the court has no jurisdiction to determine the applicant's right to it, and the judgment must be limited to the land in contest.

ID. — AFFIDAVIT — PROOF OF COMPLIANCE WITH LAW. — An applicant for the purchase of state land must truthfully state in his affidavit all the facts required to be stated therein; and in an action to determine conflicting claims to the land, each party must allege and prove a strict compliance with the law, and if he fails so to do, judgment will be entered against him.

ID. — SUITABLENESS FOR CULTIVATION — TIMBER-LAND. — The fact that school-land is in most places heavily covered with redwood timber and brush; that it would not, when cleared, produce ordinary agricultural crops in average quantities; and that it is more valuable for timber than for agriculture, — does not render it unsuitable for cultivation, within the meaning of the constitution.

APPEAL from a judgment of the Superior Court of Mendocino County.

The facts are stated in the opinion.

*T. L. Carothers*, for Appellant.

*J. A. Cooper*, for Respondent.

BELCHER, C. — This is an action to determine a contest between the plaintiff and defendant as to which of them is entitled to purchase certain school-lands. The court below gave judgment for the defendant, and the plaintiff appeals therefrom on the judgment roll.

The court found the facts of the case to be, in substance, as follows: —

On the twenty-third day of February, 1883, the defendant filed in the office of the state surveyor-general his affidavit and application to purchase the northeast quarter and the south half of the northwest quarter of a certain thirty-sixth section of land in Mendocino County. He was at the time qualified to purchase school-lands, and his affidavit was in the form then prescribed by section 3495 of the Political Code, and all the facts set forth therein were true. On the third day of May, 1883, the application was duly approved by the surveyor-general, and thereafter, on the sixteenth day of June following, defendant paid twenty per cent of the purchase-money and the first year's interest on the balance, and received from the register of- the land-office a certificate of purchase for the land, in the usual form.

On the twenty-third day of February, 1884, the plaintiff went upon the land in dispute, and began to build a cabin thereon for himself, and ever since has been and now is an actual settler on the land. At the time of his settlement there was no one in the adverse possession of the land, or any part thereof, but about the 27th of the same month one Thomas Dingwall went upon a portion of the land, and commenced erecting a cabin thereon. He completed the cabin and moved into it, with his family, prior to the 18th of April, 1884, and continued

to live in it with his family till about the middle of June
following.   Dingwall claimed the land, and offered to sell
out his claim to plaintiff, and plaintiff knew of his pos-
session, and that his family were in the cabin prior to
April 18th.   While Dingwall was on the land, he was
engaged a part of the time getting out redwood timber
for the defendant.

On the eighteenth day of April, 1884, plaintiff made
an affidavit and application to purchase the whole of
the north half of the said section 36, and on the 6th
of May following filed the same in the office of the sur-
veyor-general.   He was also qualified to purchase school-
lands, and his affidavit was in proper form, and all the
facts therein set forth were true, except the statement
that there was no adverse occupation of the land, which
at the time of making and filing the affidavit was untrue.

The land in controversy " is situate on the top and
sides of a high ridge, and is covered heavily in most
places with redwood timber and brush, and is now
chiefly valuable for its timber; the surface is broken, cut
up with deep ravines in places, and steep, while in places
there are a few acres level enough that it could be plowed
if it were cleaned of timber.   The soil is poor, and rocky
in places.   There are two or three of the forties in
dispute that if the timber was moved therefrom the
greater part thereof would be suitable for cultivation,
but would not produce ordinary agricultural crops in
average quantities, and is more valuable for timber than
for agriculture."

The conclusion drawn from the facts was, that the
plaintiff take nothing by his action, and that the defend-
ant was entitled to a patent for the land applied for by
him, upon his surrendering his certificate of purchase
and paying the balance due for purchase-money and
interest.

That the judgment was properly entered against the
plaintiff appears to be clear.   He stated in his affidavit

that there was no occupation of the land applied for by him adverse to any that he had, and this statement was found by the court to be untrue, so far as regards the land in controversy. It is contended that this finding was not justified by the probative facts found as to Dingwall's occupation, but we think it was. Dingwall built a cabin on the land, and was living in it with his family. He claimed the land, and offered to sell his claim to the plaintiff; and the plaintiff knew of his residence and claim when he made his application. But even if these probative facts were not sufficient to justify the finding, still the evidence is not before us, and we cannot say that that did not justify it. It results that, under the well-settled rule in such cases, the plaintiff acquired by his application no rights to the land in contest which can be enforced in the courts. (*McKenzie* v. *Brandon,* 71 Cal. 209; *Mosely* v. *Torrence,* 71 Cal. 318; *Plummer* v. *Woodruff,* 72 Cal. 29; *Harbin* v. *Burghart,* 76 Cal. 119.)

It is further contended that judgment should at least have been entered in favor of the plaintiff for the eighty acres applied for by him, and not included in the application of defendant. But there was no contest as to that eighty-acre tract, and the court had therefore no jurisdiction to determine the plaintiff's rights to it. The judgment was necessarily limited to the land in contest, and could determine nothing in regard to land not in contest.

The only remaining question is as to the rights of defendant.

The rule is settled that when one seeks to purchase land from the state, he must state in his affidavit, and state truly, all the facts required to be stated therein; and when a case is brought into court for the determination of conflicting claims to the land, each party must set forth in his pleadings, and show by his proofs, that he has strictly complied with the law, and by such compliance has become entitled to make the purchase. If he fails to do this, judgment will be entered against him.

(*Gilson* v. *Robinson*, 68 Cal. 543; *McKenzie* v. *Brandon*, 71 Cal. 209; *Harbin* v. *Burghart*, 76 Cal. 119.)

The constitution provides that "lands belonging to this state which are suitable for cultivation shall be granted only to actual settlers, and in quantities not exceeding 320 acres to each settler, under such conditions as shall be prescribed by law." (Const., art. 17, sec. 3.)

The statute in 1883 (Pol. Code, sec. 3495) provided that an applicant to purchase any portion of a sixteenth or thirty-sixth section must state in his affidavit, among other things, "that he is an actual settler thereon," without regard to the character of the land. This section was amended, in 1885, so as to read: "The affidavit must also state whether the land is or is not suitable for cultivation; and if it is, that the applicant is an actual settler thereon."

The defendant stated in his affidavit that he was an actual settler on the land applied for, and the court found that the affidavit complied with the law, and all the facts set forth were true. The affidavit was therefore sufficient at the time it was made, and it was not rendered insufficient by the subsequent change in the statute. He alleged in his answer that he was an actual settler on the land when he filed his application and when the certificate of purchase was issued to him, but as to this averment there was no finding. He also alleged that the land was not suitable for cultivation, and the only finding as to the cultivable character of the land was that above quoted. Now, as there was no finding that defendant was an actual settler on the land when he obtained his certificate of purchase, it must be presumed that he was not. It follows if one half or more of any legal subdivision was suitable for cultivation, that as to such subdivision the certificate was improperly issued, and the defendant acquired no rights thereto under it.

The question, then, is, Was the land, or some portion of

it, suitable for cultivation? The finding is of somewhat doubtful import, but as we construe it, we think the question must be answered in the affirmative. The language used is: "There are two or three of the forties in dispute that if the timber was moved therefrom the greater part thereof would be suitable for cultivation, but would not produce ordinary agricultural crops in average quantities." The fact that the land in most places was heavily covered with redwood timber and brush did not render it unsuitable for cultivation within the meaning of the constitution. (*Manley* v. *Cunningham*, 72 Cal. 236.) Nor did the fact that it would not, when cleared, produce *ordinary* agricultural crops in *average* quantities render it so. To make an average, some lands must necessarily produce less than the average, while others produce more; and it would seem absurd to say that all lands producing less than the average must for that reason be held unsuitable for cultivation. Nor do we think the fact that the land was more valuable for timber than for agriculture decisive of the question. Land may be very valuable for the timber upon it, and also be valuable for agricultural purposes after it is cleared; and this may be true of the land in question.

It follows that if any of the forties were suitable for cultivation, within the meaning of the constitution, they should not have been included in the judgment for defendant.

We advise, therefore, that the judgment, in so far as it is against the plaintiff, be affirmed, and that in so far as it is in favor of the defendant, it be reversed, and the cause remanded to the court below for a new trial.

TEMPLE, C., and FITZGERALD, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment, in so far as it is against the plaintiff, is affirmed, and in so far as it is in favor of the defendant, it is reversed, and the cause remanded to the court below for a new trial.