[Civ. No. 172. Second Appellate District.—March 15, 1906.]

## JAMES SANFORD, Appellant, v. EDMUND L. MAX- WELL et al., Respondents.

STATE LANDS—SUITABLENESS FOR CULTIVATION—CONSTRUCTION OF CONSTITUTION—PROTECTION OF SETTLERS.—In view of the provisions of the state constitution discouraging the holdings of large tracts of uncultivated and unimproved land by individuals and corporations, and that land ''suitable for cultivation '' cannot be purchased by one not a settler thereon, school land, some portion of which in each subdivision is suitable for cultivation, cannot be purchased by one not a settler thereon; and the words ''suitable for cultivation'' must be held to apply to all tracts of land on which there is arable or tillable land sufficient, with the use of the other lands for pasture or otherwise, to furnish a permanent support to the settler.

ID.—CONSTRUCTION OF POLITICAL CODE—CHARACTER OF LEGAL SUBDIVISIONS.—The provision of section 3495 of the Political Code ''that any smallest legal subdivision of school lands shall be deemed suitable for cultivation, if any part not less than half of its area will, without artificial irrigation, but with or without the clearing of timber or other growth therefrom, by the ordinary processes of tillage, produce ordinary agricultural crops in average quantity,'' is to be construed as merely providing affirmatively that land coming within that description shall be regarded as suitable for cultivation; but it cannot be construed as providing that land not coming within the description shall be held not suitable for cultivation, as that would render the act unconstitutional.

ID.—CONTEST BETWEEN SETTLER AND OTHER CLAIMANTS—FINDINGS—REVERSAL OF JUDGMENT.—In a contest between a settler, plaintiff, and other claimants not settlers, defendants, for the purchase of a tract of land comprising two hundred and sixty-eight and eighty hundredths acres, where the findings, with regard to each subdivision thereof, showed that there were small areas of open land clear of brush, and which may be further cleared, more or less, so as to be capable of cultivation, but that on no subdivision could

more than one-half of the area be so cultivated; and, with regard to the tract as a whole, showed that not more than one-third of it was suitable for cultivation, and that plaintiff was an actual *bona fide* settler thereon, with actual possession limited to his house and its environs —a judgment for the defendants must be reversed, with directions to render judgment for the plaintiff.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.   E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

William Shipsey, for Appellant.

McD. R. Venable, for Respondents.

SMITH, J.—Plaintiffs and defendants are applicants for the purchase of the subdivisions of land described in the complaint, aggregating two hundred and sixty-eight and eighty hundredths acres, all of which have been listed to the state; and upon the demand of the plaintiff the contest thus arising was referred to the lower court.   It is alleged in the complaint, and in the affidavit filed in the surveyor general's office and attached to the complaint as part thereof, among other things: (1) That ever since June 17, 1901, "plaintiff has been and now is an actual *bona fide* settler thereon"; (2) that the land "is, and at all times herein mentioned was, suitable for cultivation"; and (3) that "more than one-half of each legal subdivision thereof was and is suitable for cultivation," etc. In the answer, besides denials, it is alleged: (1) That the plaintiff is not now and never has been in the actual possession of said land; (2) that "said land is not suitable for cultivation"; and (3) "that no legal subdivision of said land is, or at any time has been, suitable for cultivation within the meaning of section 3495 of the Political Code."   The applications of the parties are in due form and sufficient, otherwise than as affected by the facts at issue as above stated.

The court finds the allegations of the complaint as to plaintiff's settlement on the land to be true, and it also finds the allegation of the answer to be true, that the plaintiff has never been in actual possession of said land.   But the two facts are

not inconsistent, for there may be a *bona fide* settlement on land without actual possession of more than the settler's house and its environs; and to reconcile the findings we must suppose that the finding of the court as to the actual possession refers to the land as a whole. The issues raised by the third allegation of the complaint and the corresponding allegation of the answer relate evidently to the proviso in section 3495 of the Political Code, which is "that any smallest legal subdivision of school lands shall be deemed suitable for cultivation if any part not less than one-half of its area will, without artificial irrigation, but with or without the clearing of timber or other growth therefrom, by the ordinary processes of tillage, produce ordinary agricultural crops in average quantity," etc. The finding of the court on these issues is, in effect, that in each subdivision there are small areas of open land, clear of brush, etc., and that the subdivision may be further cleared, "more or less so as to be capable of cultivation by ordinary process of tillage by plowing," but that in no subdivision can more than half of the area be so cultivated. But the proviso in section 3495 cited is not to be regarded as intended in any way to construe the provisions of section 3, article XVII, of the constitution, further than to provide affirmatively that every legal subdivision coming within the description shall be regarded as "suitable for cultivation"; nor is it to be construed as providing that land not coming within the description shall be held to be not "suitable for cultivation." Otherwise, the act would be unconstitutional. (*Fulton* v. *Brannan,* 88 Cal. 456, [26 Pac. 506]; *Albert* v. *Hobler,* 111 Cal. 400, [43 Pac. 1104].) It is clear, therefore, that so far as the plaintiff's case is concerned, the issue and the corresponding finding is to be regarded as immaterial. But with regard to the defendants' case it is otherwise. For by the provision of the constitution cited it is expressly provided that lands "belonging to this state which are suitable for cultivation shall be granted only to actual settlers," which is, in effect, to prohibit the granting of such lands to the defendants; and, as it is found that some portion of the lands in each subdivision of the land in question is "suitable for cultivation," it follows that the judgment in favor of the defendants cannot be sustained.

This leaves us to consider only the plaintiff's case, which requires for its support the affirmative fact that the lands in question are "suitable for cultivation" in the sense of that term as used in the constitution; and the question is, whether upon the findings of the court this fact appears. On this point, besides the finding already stated and a finding as to the general character of the land, it is found that "as a whole not more than one-third of the area of the whole tract is capable of cultivation by following the ordinary processes of tillage, the other two-thirds [being] rocky, mountainous, and totally· unsuitable for cultivation." There are some other findings of a general character, that the land in question is "not suitable for cultivation." But these we take to be mere conclusions of law from the finding of specific facts, which we think are to be construed as finding that about a third of the area of the whole tract, and about a half of some of the subdivisions and some portions of the others, "is capable of cultivation by following the ordinary processes of tillage by plowing." In considering the question thus presented we may disregard the findings as to the character of the several subdivisions and confine ourselves to the finding as to the character of the land in controversy as a whole; and the specific question thus presented is whether a tract of land of which a third, ·or something in the neighborhood of a third, is susceptible of ordinary cultivation is or is not to be regarded as coming within the description of the constitutional provision. To this question we are of the opinion that an affirmative answer must be given. By section 2 of the article cited it is provided: "The holding of large tracts of land, uncultivated and unimproved, by individuals or corporations, is against the public interest, and should be discouraged by all means not inconsistent with the rights of private property." From this, and the provisions of section 3, "it must be manifest that it was intended that all lands within this state should, so far as governmental action could accomplish it without violating private rights, be held in small tracts, and constitute homes for its owners." (*Fulton* v. *Brannan,* 88 Cal. 456, [26 Pac. 506].) Hence, construing the constitutional provisions in the light of the policy thus declared, we think the words "suitable for cultivation" must be held to

apply to all tracts of land suitable for settlement or homes, or, in other words, all tracts of land on which there is arable or tillable land sufficient, with the use of the other lands of the tract for pasturage or otherwise, to furnish a permanent support to the settler. Accordingly, it is said in *Jacobs v. Walker*, 90 Cal. 47, 48, [27 Pac. 49], "the question, then, is, Was the land, or some portion of it (i. e., sufficient in the sense above indicated) suitable for cultivation?" And we think we must say, as said in that case, "the finding is of somewhat doubtful import, but, as we construe it, we think the question must be answered in the affirmative."

For these reasons, the judgment appealed from must be reversed, and the cause remanded, with directions to enter judgment in favor of the plaintiff; and it is so ordered.

Gray, P. J., and Allen, J., concurred.